# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY CONNELLY, | Case No. 1:21-cv-00746-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF PAGA SETTLEMENT WITH REDUCTION IN ATTORNEYS' FEE AWARD AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| v. | |
| STARBUCKS CORPORATION, | |
| Defendant. | (ECF No. 37) |

## I.

## INTRODUCTION

Plaintiff Kerry Connelly ("Connelly"), maintains this representative action against Defendant Starbucks Corporation ("Starbucks"), for alleged failures to provide herself and other employees with complete and accurate itemized wage statements in compliance with California Labor Code § 226(a), and for penalties pursuant to California Labor Code §§ 2698 *et seq.* ("PAGA"). Currently before the Court is Plaintiff's motion to approve the settlement of this PAGA action, and any individual claims between the Plaintiff and Defendant relating to this action. The Court held a hearing on the motion on September 27, 2023. For the reasons explained herein, Plaintiff's motion is granted with a reduction in the attorneys' fees outlined below, and associated increase in the penalties awarded to the State of California and the

aggrieved employees.

## II.

## BACKGROUND

On March 19, 2021, Plaintiff filed the original putative class action complaint in this matter in the Superior Court of California, County of Stanislaus, bearing case number CV-21-001661.  (See ECF No. 1 at 2.)  On April 2, 2021, Plaintiff filed a first amended complaint in state court.  (Id.)  On May 6, 2021, Defendant filed an answer to the first amended complaint.  (Id.)

On May 7, 2021, Defendant removed this action to the United States District Court for the Eastern District of California.  (ECF No. 1.)  On June 24, 2021, the Court issued a scheduling order setting deadlines for class discovery and the filing of a class certification motion.  (ECF No. 7.)

On March 1, 2022, the Court issued an order to show cause why this actin should not be dismissed for failure to prosecute, in light of no class certification motion having been filed.  (ECF No. 8.)  On March 8, 2022, the Court discharged the order to show cause.  (ECF No. 11.)

On March 29, 2022, the Court entered a stipulated request to allow for Plaintiff to file a second amended complaint eliminating class allegations.  (ECF Nos. 12, 13.)  On April 5, 2022, Plaintiff filed the second amended complaint ("SAC"), the operative complaint in this action.  (ECF No. 14.)  Plaintiff's SAC brings claims for (1) inaccurate itemized wage statements in violation of California Labor Code § 226(a); and (2) penalties for California Labor Code violations pursuant to PAGA, California Labor Code §§ 2698 et seq.  Specifically, Plaintiff alleges that Defendant failed to furnish accurate itemized wage statements that show: (i) the name of the legal entity that is the employer; or (ii) the total hours worked.  (SAC ¶¶ 13-22.)

On April 19, 2022, Defendant filed an answer to the SAC.  (ECF No. 16.)  On April 21, 2022, the Court issued a general scheduling order.  (ECF No. 18.)  On August 24, 2022, this action was reassigned from District Judge Dale A. Drozd to District Judge Ana de Alba.  (ECF No. 19.)

On May 19, 2023, Defendant filed a motion for summary judgment.  (ECF No. 28.)  On

June 1, 2023, the parties filed a notice of settlement.  (ECF No. 30.)  On June 2, 2023, the Court issued an order holding the motion for summary judgment in abeyance pursuant to the notice of settlement, and ordered the parties to file dispositional documents.  (ECF No. 31.)

On July 27, 2023, Plaintiff filed the motion to approve the PAGA settlement that is currently before the Court.  (ECF No 37.)  On August 10, 2023, Defendant filed a statement of non-opposition to the PAGA motion, that includes a note of clarification.  (ECF No. 39.)

On August 11, 2023, pursuant to the parties' stipulation for magistrate judge consent to the PAGA motion only, District Judge de Alba reassigned the PAGA motion to the assigned Magistrate Judge.  (ECF Nos. 10, 11.)  On August 11, 2023, the Court reset the hearing on the PAGA motion for September 27, 2023, in Courtroom 9.  (ECF No. 42.)  On September 12, 2023, pursuant to the parties' consent to magistrate jurisdiction for all purposes, this action was reassigned to Magistrate Judge Stanley A. Boone to conduct all further proceedings in this case, including the trial and entry of final judgment, in accordance with 28 U.S.C. § 636(c).  (ECF No. 48.)

On September 27, 2023, the Court held a hearing on Plaintiff's motion.  Simon Yang appeared on behalf of Plaintiff, and Greg Knopp appeared on behalf of Defendant.  Both parties appeared via videoconference.

**III.**

**LEGAL STANDARD**

In 2003, the California Legislature enacted the Private Attorney General Act, California Labor Code §§ 2698 *et seq.*, after declaring that "adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  Arias v. Superior Ct., 46 Cal. 4th 969, 980 (2009).

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

1    code violations on behalf of themselves and other current or former employees.  Cal. Lab. Code

2    § 2699(a).  An "aggrieved employee" is defined as "any person who was employed by the

3    alleged violator and against whom one or more of the alleged violations was committed."  Cal.

4    Lab. Code § 2699(c).

5          An employee plaintiff suing under PAGA "does so as the proxy or agent of the state's

6    labor law enforcement agencies."  Arias, 46 Cal. 4th at 986.  In such action, "the employee

7    plaintiff represents the same legal right and interest as state labor law enforcement agencies—

8    namely, recovery of civil penalties that otherwise would have been assessed and collected by the

9    Labor Workforce Development Agency."  Id. (citing Cal. Lab. Code § 2699(a), (f)).

10         Therefore, a judgment in such PAGA "action binds all those, including nonparty

11   aggrieved employees, who would be bound by a judgment in an action brought by the

12   government.'  Arias, 46 Cal. 4th at 986; see also Iskanian v. CLS Transportation Los Angeles,

13   LLC, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action

14   on behalf of an individual or in the public interest, and a private person lacks an independent

15   legal right to bring the action, a person who is not a party but who is represented by the agency is

16   bound by the judgment as though the person were a party."), abrogated on other grounds by

17   Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 213 L. Ed. 2d 179 (2022); Perez v. All

18   Ag, Inc., No. 118CV00927DADEPG, 2021 WL 3129602, at *3 (E.D. Cal. July 23, 2021) (same).

19         "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce

20   Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' "  Arias,

21   46 Cal. 4th at 980–81 (quoting Cal. Lab. Code § 2699(i)).  "The civil penalties recovered on

22   behalf of the state under the PAGA are distinct from the statutory damages to which employees

23   may be entitled in their individual capacities."  Iskanian, 59 Cal. 4th at 381.  Therefore, "a

24   request for statutory penalties provided by the Labor Code for employer wage-and-hour

25   violations, which were recoverable directly by employees well before the [PAGA] became part

26   of the Labor Code," is distinct from "a demand for 'civil penalties,' previously enforceable only

27   by the state's labor law enforcement agencies."  Id. (quoting Caliber Bodyworks, Inc. v. Superior

28   Ct., 134 Cal. App. 4th 365, 377 (2005)).

1     To bring an action under PAGA, an aggrieved employee must first provide written notice

2   to the LWDA as well as to the employer.  Id. (citing Cal. Lab. Code § 2699.3(a)(1)(A)).  Further,

3   the trial court "shall review and approve any settlement" of a PAGA action, and "[t]he proposed

4   settlement shall be submitted to the agency at the same time that it is submitted to the court."

5   Cal. Lab. Code § 2699(l)(2).

6     "There is no binding authority identifying the proper standard of review of PAGA

7   settlements to be employed by the court."  Perez, 2021 WL 3129602, at *3.  "In the class action

8   context, where PAGA claims are also often brought, a district court must independently

9   determine that a proposed settlement agreement is 'fundamentally fair, adequate and reasonable'

10   before granting approval."     Beltran v. Olam Spices & Vegetables, Inc., No.

11   118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D. Cal. Feb. 2, 2023) (quoting Officers for

12   Justice v. Civil Serv. Comm'n of City & County of San Francisco, 688 F.2d 615, 625 (9th Cir.

13   1982)); see also Perez, 2021 WL 3129602, at *3 (same).  "However, this is not a class action,

14   and PAGA claims are intended to serve a decidedly different purpose—namely to protect the

15   public rather than for the benefit of private parties.  Perez, 2021 WL 3129602, at *3 (citing

16   Arias, 46 Cal. 4th at 986).   In O'Connor, where both class action and PAGA claims were

17   covered by a proposed settlement, the LWDA "stressed that":

18
       It is thus important that when a PAGA claim is settled, the relief
19     provided for under the PAGA be genuine and meaningful,
       consistent with the underlying purpose of the statute to benefit the
20     public and, in the context of a class action, the court evaluate
       whether the settlement meets the standards of being
21     "fundamentally fair, reasonable, and adequate" with reference to
       the public policies underlying the PAGA.

22   O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016); see also Perez,

23   2021 WL 3129602, at *4 n.5 ("The LWDA is not aware [of] any existing case law establishing a

24   specific benchmark for PAGA settlements, either on their own terms or in relation to the

25   recovery on other claims in the action." (quoting O'Connor v. Uber Techs., Inc., No. 3:13-cv-

26   03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3)).

27     The Court proceeds to evaluate the PAGA settlement under the standards expressed in

28   O'Connor and that this Court has previously applied to settlements containing both class and

PAGA claims.  See Beltran, 2023 WL 1467118, at *20-21; see also Perez, 2021 WL 3129602, at *4 ("Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning in O'Connor and therefore . . . the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals."); Murray v. Scelzi Enterprises, Inc., No. 118CV01492LJOSKO, 2019 WL 6045146, at *12 (E.D. Cal. Nov. 15, 2019) (same).  "The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel."  Perez, 2021 WL 3129602, at *4 (citing Officers for Justice, 688 F.2d at 625).

Accordingly, "the Court evaluates the PAGA settlement in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory[,]' Cal. Labor Code § 2699(e)(2)[,] . . . also considers the five relevant Hanlon factors and discusses whether 'the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation[,]' Cal. Labor Code § 2699.3(b)(4)."  Ramirez v. Benito Valley Farms, LLC, No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) ("Many of these factors are not unique to class action lawsuits and bear on whether a settlement is fair and has been reached through an adequate adversarial process . . . the Court finds that these factors are useful in evaluating a PAGA settlement[,] [h]owever, three of the Hanlon factors—risk of maintaining class action status, presence of a governmental participant, and reaction of class members—are not relevant to a PAGA settlement that is not a class action and in which the LWDA is not involved." (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998))).

/ / /

/ / /

# IV.

## DISCUSSION

The Court first outlines the course of negotiation leading to settlement, and the settlement terms, before analyzing the terms of the settlement under the standards expressed above, including the request for attorneys' fees and costs, as well as the incentive award for the named Plaintiff that includes a component of compensation for an additional release of Plaintiff's individual claims.

### A.     The Parties' Settlement

1.     <u>Course of Discovery and Negotiation</u>

The parties met and conferred about Plaintiff's allegations and claims as well as Defendant's defenses.  (Mot. 8; Decl. Simon Yang Supp. Mot. ("Yang Decl.") ¶ 3, ECF No. 37-1 at 1.)  The parties engaged in formal discovery, including the exchange of document requests and interrogatories, the deposition of Plaintiff, and the deposition of Defendant's corporate designee. (<u>Id.</u>)  Plaintiff also requested, and Defendant provided, additional informal discovery to enable the parties to explore the possibility of an informal resolution.  (<u>Id.</u>)  Plaintiff proffers Defendant's willingness to produce this information enabled Plaintiff to evaluate the full scope of Defendant's potential liability.  (<u>Id.</u>)

Plaintiff submits that based on thorough investigation of the allegations and claims alleged in the operative complaint, Plaintiff determined that, the allegation that Defendant's wage statements generally fail to show the employer name, lack merit, since the employer name was not omitted in any wage statements issued "at the time of each payment of wages," Cal. Lab. Code § 226(a).  (Mot. 9; Yang Decl. ¶ 4.)  Plaintiff, however, was able to confirm that due to an inadvertent software glitch, on 16,800 occasions, Defendant furnished employees with wage statements that Plaintiff contends do not show the total hours worked.  (<u>Id.</u>)  Defendant disagrees and believes that its wage statements show the total hours worked, even for the 16,800 wage statements that Plaintiff contends are unlawful.  (<u>Id.</u>)  Ultimately, the Parties disagree about whether approximately 16,800 wage statements comply with California Labor Code § 226(a), and over the course of several months of negotiations, the Parties were able to agree to the terms

of a settlement memorialized in the Joint Stipulation of PAGA Settlement (the "Agreement"). (Mot. 9; Yang Decl. ¶ 4, Ex. 1, ECF No. 37-1 at 8-23.)

2.    The General Terms of the Settlement Agreement

The Agreement requires Defendant to pay a non-reversionary Settlement Amount of $252,000.00.  (Agreement § 3.1.)  From the Settlement Amount, the parties request that the Court approve a PAGA Penalty Fund, Administration Costs, Attorneys' Fees and Costs Award, and General Release Payment.  (Agreement § 3.1.1-3.1.4.)

The Agreement provides for an award of attorneys' fees in the amount of 33⅓% of the $252,000.00 Settlement Amount, or $84,000.00, in fees, plus up to $10,000.00 in costs. (Agreement § 3.1.1.)[1]  However, Plaintiff now seeks reimbursement of only $4,794.16 in costs.

The Agreement provides for a $10,000.00 General Release Payment to Plaintiff (i) as consideration for her additional general release of claims and waiver of Civil Code section 1542; and (ii) in recognition of her efforts and work in prosecuting the lawsuit on behalf of the State. (Agreement § 3.1.2.)

The Agreement provides for up to $16,000.00 in Administration Costs to a settlement administrator for effectuating the payments contemplated by the Agreement, paid from the Gross Settlement Amount.  (Agreement § 3.1.3.)

The Agreement provides for all remaining funds to constitute a PAGA Penalty Fund, 75% of which would be distributed to the Labor and Workforce Development Agency ("LWDA") and 25% of which would be distributed to allegedly aggrieved employees. (Agreement § 3.1.4.)  Any amounts for attorneys' fees and costs, the General Release Payment, and Administration Costs that are not approved shall be added to the PAGA Penalty Fund.  (Id.)

Based on the above fees, costs, and incentive awards, Plaintiff proffers it is expected that the LWDA will receive $102,904.38 as its share of PAGA Penalties and employees will receive $34,301.46 as their share of PAGA Penalties.  (Yang Decl. ¶ 6.)  Specifically, "[b]ecause Plaintiff's Counsel seeks reimbursement of $4,794.16 in costs only (and the Administration

---

[1] Although the Agreement specifies that Defendant "agrees not to oppose such request," and thus constitutes a clear sailing agreement, the Court reduces the attorneys'' fees requested to the benchmark of 25%.

1    Costs are $16,000.00, requested attorneys' fees are $84,000.00, and requested General Release

2    Payment is $10,000.00), it is expected that the PAGA Penalty Fund will be $137,205.84," and

3    "[t]he LWDA will receive $102,904.38 as its share of PAGA Penalties and employees will

4    receive $34,301.46 as their share of PAGA Penalties."  (Id.)

**B.    The Court Approves the Settlement with a Reduction in Attorneys' Fees and Increase in the PAGA Penalty Fund**

1.    Primary Statutory Requirements and Applicable Fairness Factors

8    PAGA states that any "proposed settlement shall be submitted to the agency at the same

9    time that it is submitted to the court."  Lab. Code. § 2699(l)(2).  In satisfaction of that

10    requirement, Plaintiff submitted a copy of the Agreement and the PAGA motion to the LWDA

11    through the LWDA s online filing system, in conjunction with filing the PAGA motion with the

12    Court.  (Mot. 11; Yang Decl. ¶ 15, Ex. 6.)

13    PAGA requires that seventy-five percent (75%) of the civil penalties recovered by

14    aggrieved employees must be allocated to the LWDA, and twenty-five percent (25%) allocated

15    to aggrieved employees.  Cal. Labor Code § 2699(i).  As stated above, the Agreement in this case

16    allocates the PAGA penalty fund accordingly.  (See Agreement § 3.1.4.)

17    Plaintiff argues the factors that would give rise to a presumption of fairness in the context

18    of a class action settlement are present in this PAGA action.  (Mot. 12.)  First, the Court accepts

19    both Plaintiff's counsel and Defendant's counsel have a great deal of experience in wage and

20    hour and PAGA litigation; and Plaintiff's counsel have extensive class action and PAGA

21    litigation experience and have been approved as class counsel in numerous wage and hour class

22    actions.  (Mot. 12; Decl. Larry W. Lee ("Lee Decl.") ¶¶ 5-8, ECF No. 37-2 at 1; Yang Decl. ¶¶

23    9-13.)

24    Further, each side has apprised the other of their respective factual contentions and legal

25    theories, and each side has considered the other's contentions and theories.   (Mot. 12.)

26    Specifically, Defendant provided the relevant numbers of certain types of wage statements,

27    among other information—enabling Plaintiff to assess the full value of the PAGA claims and

28    further enabling negotiations to take place between the parties.  (Mot. 12; Yang Decl. ¶ 3.)

1    Plaintiff argues that as the settlement is the result of extensive arm's length negotiations between

2    the Parties and their counsel, it is entitled to a presumption of fairness.  (Mot. 12; Yang Decl. ¶

3    9.)  The Court finds this principle, generally utilized in class action settlements including those

4    with PAGA claims, weighs in favor of finding the settlement here is fundamentally fair,

5    reasonable, and adequate in view of PAGA's public policy goals and statutory requirements.

6    See, e.g., Beltran, 2023 WL 1467118, at *22 ("The Court is to accord great weight to the

7    recommendation of counsel because they are aware of the facts of the litigation and in a better

8    position than the court to produce a settlement that fairly reflects the parties' expected outcome

9    in the litigation." (citing Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D.

10   523, 528 (C.D. Cal. 2004))).

11       The Agreement requires Defendant to pay $252,000.00—which Plaintiff proffers is

12   approximately $15.00 per-pay-period for the 16,800 wage statements that Plaintiff contends were

13   unlawful.  (Mot. 12; Yang Decl. ¶ 5.)  Plaintiff contends this amounts to approximately 15% of

14   Defendant's potential liability and is an excellent result for the State.  (Id.)  The 15% figure

15   proffered by Plaintiff is based on a contention that the alleged wage statement failures resulted in

16   a $100 potential per-pay-period penalty for the 16,800 wage statements.  (Yang Decl. ¶ 5.)  This

17   would result in a potential total liability of $1,680,000.00.  (Id.)[2]

18       However, while Defendant submitted the statement of non-opposition to the motion,

19   therein Defendant also provided a clarification to this figure, stating:

20           Starbucks writes separately to clarify that the software glitch
             referenced in Connelly's motion caused the "total hours worked"
21           line to be dropped from the first 2,800 wage statements in each pay
             period from September 29, 2019 to April 30, 2021, or 114,800
22           wage statements in total. See Dkt. No. 28. Starbucks contends that
             even the affected wage statements complied with the Labor Code,
23           because the total hours worked was apparent from the face of the
             wage statement given the individual line items. Id. at 2. However,
24           because the complaint places all 114,800 wage statements at issue
             (not only the 16,800 that Connelly contends create the most risk
25           for the company), Starbucks contends that the per-pay-period value
             of the settlement is $2.20 ($252,000 / 114,800).
26

27   _____

28   [2]  $252,000.00 ÷ $1,680,000 = 0.15, or 15%.

1  (ECF No. 39 at 2.)  If the Court accepts Defendant's position that the per-pay-period value of the

2  settlement is $2.20, assuming the same potential $100 per-pay-period penalty, the potential total

3  liability would be $11,480,000.00, and the result would be a settlement amount equaling

4  approximately 2.2% of Defendant's potential liability.[3]

5      Plaintiff contends that although she and her counsel are confident that litigation of the

6  claims would result in a judgment against Defendant, they recognize the inherent risks in

7  litigation, including the specific risks that the applicable law could change, that liability could

8  not be established at trial, or that penalties awarded after trial would be reduced.  (Mot. 13; Yang

9  Decl. ¶ 7.)  Thus, Plaintiff submits to the Court that the settlement is fair, reasonable, and

10 adequate, given the inherent risks of litigation, as well as the potential for appeals and the costs

11 of pursuing litigation.  (Id.)

12     In this regard, Plaintiff emphasizes Defendant contested the merits and denied it was

13 liable at all, and even if Plaintiff prevailed on the merits, Defendant contested the extent of

14 liability.  (Yang Decl. ¶ 5.)  Specifically, Defendant contended that PAGA penalties would be

15 subject to discretionary reductions, and Defendant continued to rely on its experience in prior

16 PAGA litigation, in which it defended PAGA claims alleging different Labor Code violations

17 through a bench trial, where the trial court reduced PAGA penalties by 90%—even though the

18 employee prevailed on the PAGA claims.  See Carrington v. Starbucks Corp., 30 Cal. App. 5th

19 504, 529 (2018) ("Although the trial court may have disagreed with Starbucks regarding the

20 issue of liability, it clearly took the circumstances proffered by Starbucks into consideration

21 when it imposed the penalty, as evident from the significant reduction of the $50 maximum

22 penalty (per initial violation) to the penalty imposed—only $5 per initial violation[,] which] [t]he

23 trial court stated [] was warranted because imposing the maximum penalty would be unjust,

24 arbitrary, and oppressive based on Starbucks's 'good faith attempts' to comply with meal break

25 obligations and because the court found the violations were minimal.").

26     Plaintiff argues that while the parties disagree on the application of the law to the facts,

27

28 _____
   [3] $114800 \times 100 = 11,480,000.$  $252000 \div 11480000 = 0.02195$, or approximately $2.2\%$.

1   each party recognized in negotiations that, if taken to trial, the other party would at least have

2   reasonable arguments, such that the Settlement Amount to which the parties ultimately agreed

3   was reasonable.  (Yang Decl. ¶ 5.)  Ultimately during negotiations, based on a review of

4   Defendant's wage statements, Plaintiff argued that the potential total recovery amounted to

5   $1,680,000.00—or $100 for each of approximately 16,800 wage statements with alleged total

6   hours worked deficiencies.  (Id.)  Plaintiff contends the Settlement Amount of $252,000.00—

7   approximately 15.0% of that potential recovery—is an excellent result.  (Id.; Mot. 13.)

8          However, the Court finds it proper to adopt Defendant's position that the that the per-

9   pay-period value of the settlement is $2.20, and based on the above calculations, the Court finds

10  this results in a settlement amount equaling approximately 2.2% of Defendant's potential

11  liability.  The Court adopts Defendant's position because the Court agrees that Plaintiff's

12  operative complaint places all such wage statements at issue.  (See Compl. ¶ 13 ("Plaintiff seeks

13  penalties for Defendants' violations of Section 226, committed since September 30, 2019,

14  against all aggrieved employees.").)  Perhaps most significantly, the PAGA release that is part of

15  the Agreement provides in relevant part that Plaintiff, as a proxy for the State of California,

16  releases "any and all claims, rights, or causes of action for civil penalties . . . under California

17  Labor Code Sections 2698 et seq.," from September 29, 2019, through April 30, 2021, that are

18  "predicated on alleged violations of California Labor Code § 226, to the extent any such claims

19  are either (i) asserted in the PAGA Action or in any letter to the LWDA relating to this Action,

20  including any claims alleging that wage statements failed to provide the total hours worked, or

21  (ii) arising from, or derivative of, the claims or factual allegations asserted in this Action."

22  (Agreement § 5.1)  The Court finds the broad language of the PAGA release as applicable to the

23  claims or factual allegations in this action, weighs in favor of the Court adopting the Defendant's

24  position.  Further, as Defendant noted at the hearing, while Plaintiff proffers there is zero risk of

25  liability relating to the other 98,000 wage statements, Defendant maintains such risk, while less,

26  is not zero, and factored into the settlement of this action.

27         Plaintiff's motion, proceeding on the basis of a 15% valuation, provides little caselaw as

28  to whether a 2.2% value would be sufficient.  Courts that have approved lower end percentage

1  PAGA settlements have noted the presence of non-monetary factors supporting the settlement.

2  See Ramirez v. Benito Valley Farms, LLC, No. 16-CV-04708-LHK, 2017 WL 3670794, at *5

3  (N.D. Cal. Aug. 25, 2017) ("Although this represents only 4.5% of the total estimated possible

4  recovery for PAGA civil penalties, considering the very early stage of this litigation and

5  Defendant's weak financial condition, this percentage is reasonable [as][a]dditionally, the

6  settlement's injunctive relief provides that Defendant will comply with California wage and hour

7  laws in the future, that Defendant will join a Farm Employer Association . .  that Defendant will

8  ensure that employees are fully trained to prevent and respond to claims of sexual harassment  . .

9  . that Defendant will hold meetings to discuss preventing sexual harassment and retaliation with

10  Defendant's crew foreperson every harvesting season and will provide a telephone number to

11  report harassment in English or Spanish . . . [and] that Defendant will submit to an audit of its

12  payroll by Plaintiff's counsel in March 2018.").   As Plaintiff notes in arguing for a higher

13  attorneys' fee award, the system glitch impacted 3,963 employees from September 29, 2019,

14  through April 30, 2021, but the system glitch was corrected by Defendant by April 30, 2021,

15  shortly after Plaintiff initiated the lawsuit in January 2021.  (Yang Decl. ¶ 4.)  Thus, the filing of

16  the lawsuit resulted in employees benefiting from Defendant's correction of the system glitch

17  that and provision of clearer wage statements.  However, this is not part of the settlement and

18  thus does not appear to be a non-monetary concession that is part of the settlement bargained for.

19  Thus, there are no apparent significant non-monetary benefits that a part of the settlement

20  agreement that would counter a lower percentage monetary settlement.

21      Additionally, the Court notes that cases that have approved lower end valuation PAGA

22  settlements often accepted the lower PAGA portion in light of the fact of a larger overall class

23  settlement that would itself result in satisfying the purposes of PAGA:

24          Because the Class will receive substantial relief on the Rule 23
            claims, the "purposes of PAGA may be concurrently fulfilled." See
25          O'Connor, 201 F. Supp. 3d at 1134 ("By providing fair
            compensation to the class members as employees and substantial
26          monetary relief, a settlement not only vindicates the rights of the
            class members as employees, but may have a deterrent effect upon
27          the defendant employer and other employers, an objective of
            PAGA.").   In addition, while the PAGA recovery represents
28          approximately 2.4% of the total estimated value of the PAGA

claims, courts have approved PAGA settlements of lower percentages where the class recovery was otherwise fair and adequate. *See, e.g.*, *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of the "risks of no recovery"); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (finding a PAGA settlement of 0.15% the verdict value reasonable "in the context of the settlement as a whole").

Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc., No. 19-CV-07087-DMR, 2021 WL 1788447, at *8 (N.D. Cal. May 5, 2021) (footnote omitted).  Relatedly, courts have approved PAGA settlements where the PAGA penalty portion was a relatively small percentage of the overall class settlement.  See de Cabrera v. Swift Beef Co., No. EDCV182551PSGEX, 2020 WL 5356704, at *9 (C.D. Cal. June 25, 2020) ("The portion of the PAGA allocation that will be distributed to the LWDA represents a small percentage of the Gross Settlement Amount (.75 percent); and the total PAGA payment is a small percentage of the theoretical recovery on the PAGA claim . . . [h]owever, other courts have approved PAGA claims within the range of zero to two percent of the settlement amount.") (collecting cases).  The de Cabrera court also found in agreement with the argument that "the fair compensation otherwise provided to Class Members through the Settlement vindicates the rights of class Members as employees and may have a deterrent effect on the defendant employers, an objective of PAGA," concluding "the agreed-upon allocation to the LWDA [does] not raise concerns that Plaintiff is skirting the 'special responsibility to [his] fellow aggrieved workers' or using the PAGA claim 'merely as a bargaining chip, wherein the rights of individuals ... may be waived for little additional consideration in order to induce the employer to agree to a settlement.' "  Id. (quoting O'Connor, 201 F. Supp. 3d at 1134).

Here Plaintiff is no longer pursuing class claims after filing the second amended complaint, and is not settling a class action concurrently with the PAGA claims.  Thus, the above cases are not directly on point.

The Court does note that like in Moreno, no objection or comment from the LWDA has been received by the Court.  See 2021 WL 1788447, at *8 ("Further, Plaintiff's counsel submitted the proposed settlement agreement to the LWDA on December 4, 2020 . . . [t]hus, the

1  LWDA has had ample time to weigh in and express any concerns about the Agreement [and]
2  [t]he lack of comment from the LWDA weighs in favor of finding that the PAGA settlement is
3  reasonable.")[4]; see also Echavez v. Abercrombie & Fitch Co., No. CV 11-09754-GAF, 2017 WL
4  3669607, at *3 (C.D. Cal. Mar. 23, 2017) ("The Court infers LWDA's non-response is
5  tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty
6  amount."). This weighs in favor of approving the settlement.

7        Ultimately, having established that the Court shall proceed on the basis that the total
8  settlement amount equals approximately 2.2% of the potential total liability, even though
9  substantially lower than the value proffered in the motion, the Court finds the strength of
10 Plaintiff's case, the extent of discovery, the stage of proceedings, the continued risk and expense,
11 and the potential duration of further litigation in light of trial, weigh in favor of granting approval
12 of the PAGA settlement.

13       While Plaintiff and Defendant disagree as to what valuation calculation the Court should
14 utilize, this is not a case where there is no explanation or basis for the settlement amount
15 ultimately reached. C.f. Murray v. Scelzi Enterprises, Inc., No. 118CV01492LJOSKO, 2019
16 WL 6045146, at *12 (E.D. Cal. Nov. 15, 2019) ("Plaintiff proposes settling the PAGA claim for
17 *1.1 percent* of its estimated full worth. Plaintiff offers no rationale for settling the PAGA claim
18 for such a relatively meager value.") (emphasis in original). Rather, the Court finds the
19 settlement was reached after a fair and reasonable negotiation based not in small part on the
20 result of a similar action taken to trial by this same Defendant, where the penalties were reduced
21 substantially. See Carrington v. Starbucks, 30 Cal. App. 5th at 529 ("Although the trial court
22 may have disagreed with Starbucks regarding the issue of liability, it clearly took the
23 circumstances proffered by Starbucks into consideration when it imposed the penalty, as evident
24 from the significant reduction of the $50 maximum penalty (per initial violation) to the penalty
25 imposed—only $5 per initial violation[,] which] [t]he trial court stated [] was warranted because
26 imposing the maximum penalty would be unjust, arbitrary, and oppressive based on Starbucks's

27
28 [4] The Court acknowledges there was a much greater time between the submission and settlement approval in Moreno, than here.

1  'good faith attempts' to comply with meal break obligations and because the court found the

2  violations were minimal.").  Significantly, the Court notes that Defendant has a motion for

3  summary judgment filed on May 19, 2023, that was thereafter stipulated to be held in abeyance

4  in light of a notice of settlement filed shortly thereafter.  (See ECF Nos. 28, 30, 31.)

5      For the above explained reasons, the court finds that the PAGA settlement meets the

6  general statutory requirements, and the settlement amount is fundamentally fair, reasonable, and

7  adequate in view of the purposes of the statute.  Additionally, as discussed below, the Court

8  reduces the requested attorneys'' fees from 33⅓% of the total settlement amount, to the

9  benchmark of 25%, thereby increasing the total monetary amount that will be awarded to the

10  LWDA and the aggrieved employees.

11      The Court now turns to the consider the incentive awards, the settlement releases, the

12  attorneys' fee request, and the costs requests, to determine if they are also fundamentally fair,

13  reasonable, and adequate in view of the mandates and purposes of PAGA.

14      2.     The Settlement Releases and Incentive Award

15      Named Plaintiff, Kerry Connelly, requests a General Release Payment of $10,000.00.

16  (Agreement § 3.1.2.)  Plaintiff contends the request is reasonable in light of the general release

17  that the Agreement requires. and in recognition of Plaintiff's efforts on behalf of the State.

18      **a.**    **General Legal Standards**

19      Incentive awards are "intended to compensate class representatives for work done on

20  behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

21  and, *sometimes, to recognize their willingness to act as a private attorney general*."  Rodriguez

22  v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis added).[5]  They are

23  considered "fairly typical in class actions cases," Id. at 958 (emphasis omitted), and "are

24  particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant

25  'reputational risk' by bringing suit against their former employers."  Bellinghausen v. Tractor

26  Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citation omitted); see also In re Online DVD-

27  

28  [5]  The Court recognizes that much of the caselaw cited here pertains to incentive awards for class action settlements, or class action settlements incorporating a concurrent PAGA settlement.

1  Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (holding that the incentive payments to

2  the class representative by themselves do not create an impermissible conflict between the class

3  members and the class representatives).

4         In assessing the appropriateness of class representative enhancements or incentive

5  payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect

6  the interests of the class; (2) the degree to which the class has benefitted from those actions; (3)

7  the duration of the litigation and the amount of time and effort the plaintiff expended in

8  pursuing litigation; and (4) any notoriety or personal difficulties encountered by the

9  representative plaintiff.  Khanna v. Intercon Sec. Systems, Inc., No. 2:09-CV-2214 KJM EFB,

10  2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp.

11  2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975–77 (9th Cir.

12  2003).

13         In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service

14  award.  See Harris v. Vector Marketing Corp., No. C-08-5198 MEC, 2012 WL 381202, at *7

15  (N.D. Cal. Feb. 6, 2012) (collecting cases).  Where the representative seeks an award over the

16  "presumptively reasonable" amount, many courts in this Circuit also consider the proportionality

17  between the incentive payment and the range of class members' settlement awards and the

18  settlement amount to determine whether the requested incentive payment is excessive.  See id.

19  (collecting cases); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014);

20  Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3,

21  2009).  Importantly, such payments must be "scrutinize[d] carefully ... so that they do not

22  undermine the adequacy of the class representatives."  Radcliffe v. Experian Info. Sols. Inc., 715

23  F.3d 1157, 1168 (9th Cir. 2013) (citing Staton, 327 F.3d at 977).  Given that service awards are

24  at the discretion of the district court, In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

25  Cir. 2000), whatever the method used, the Court must make sure that where there is a "very large

26  differential in the amount of damage awards between the named and unnamed class members,"

27  that differential is justified by the record.  Staton, 327 F.3d at 978.

28  / / /

b.        **The Court finds the Settlement Releases and Incentive Award are Proper**

Plaintiff, as a proxy for the State of California, releases "any and all claims, rights, or causes of action for civil penalties (and for all resulting penalties, attorneys' fees, litigation costs, interest, and any other relief) under California Labor Code Sections 2698 *et seq.,*" from September 29, 2019, through April 30, 2021, that are "predicated on alleged violations of California Labor Code § 226, to the extent any such claims are either (i) asserted in the PAGA Action or in any letter to the LWDA relating to this Action, including any claims alleging that wage statements failed to provide the total hours worked, or (ii) arising from, or derivative of, the claims or factual allegations asserted in this Action."  (Agreement § 5.1)

Plaintiff only, as an individual, is also subject to an additional general release, including "claims arising out of or relating to Plaintiff's employment by Defendant and/or the termination of her employment with Defendant."  (Agreement § 5.2.)  Plaintiff proffers that Plaintiff alleged targeted claims in this action, and any settlement releases are specifically tailored to the targeted claims alleged, and are thus appropriate.  (Mot. 13-14, citing <u>Carter v. City of Los Angeles</u>, 224 Cal. App. 4th 808, 820 (2014).)  However, Plaintiff's authority is in relation to class settlements more generally, and further, not related to the specific individual release, and the additional monetary amount for that here in relation to the incentive award:

> A general release—covering "all claims" that were or could have been raised in the suit—is common in class action settlements. (See, e.g., *Dupuy v. McEwen* (7th Cir.2007) 495 F.3d 807, 809.) If a class member thinks a release is too broad, he can seek to remedy that problem through objection or intervention, and, if not satisfied with the result, he could appeal. (See *Toms v. Allied Bond & Collection Agency, Inc.* (4th Cir.1999) 179 F.3d 103, 105–107.) Alternatively, he could simply opt out of the class and render the scope of the release irrelevant as to him.

<u>Carter</u>, 224 Cal. 4th at 820–21.  Importantly, "[u]nlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."  <u>Sakkab v. Luxottica Retail N. Am., Inc.</u>, 803 F.3d 425, 436 (9th Cir. 2015) (citation omitted); <u>see also</u> <u>O'Connor</u>, 201 F. Supp. 3d at 1133 ("[B]ecause the employee's PAGA action acts as a 'substitute' for a governmental action, the judgment binds all those who would be bound by an action brought by the government, *including* nonparty employees . . .[t]hus, in a

1    lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even

2    class members who opt out of the class would be bound by an adverse PAGA judgment or

3    settlement.") (emphasis in original).

4           Nonetheless, in light of the Court's findings regarding the settlement amount and other

5    terms being fundamentally fair, reasonable, and adequate, the Court finds the limited PAGA

6    release applicable to all aggrieved employees during the relevant time period appropriate.

7    Further, the Court finds support for approving the incentive award here that requires an

8    additional release of individual claims of the named Plaintiff.

9           Plaintiff contends the $10,000.00 General Release Payment is reasonable in light of the

10   general release that the Agreement requires of Plaintiff, and independently, the request is

11   appropriate in recognition of Plaintiff's efforts on behalf of the State.  (Agreement § 3.1.2; Mot.

12   18; see Decl. Kerry Connelly ("Connelly Decl.") ¶¶ 2-3, ECF No. 37-3 at 1.)  Plaintiff argues as

13   to the general release, she did not proceed with litigation of all of her potential claims and instead

14   strategically pursued the targeted claims in this lawsuit to maximize her ability to recover

15   penalties for the State for the alleged violations of Section 226(a).  (Mot. 18; Connelly Decl. ¶ 6.)

16   Plaintiff contends that if she had pursued all of her individual claims, Plaintiff would have been

17   able to recover at least $5,206 and additional sums that Plaintiff cannot fully yet calculate, but

18   Plaintiff agreed to a general release as part of this settlement, though in any other context,

19   Plaintiff would have sought at least a $10,000 payment in exchange for a general release.

20          As for compensation for part of her duties as a private attorney general, Plaintiff proffers

21   she provided all necessary information and evidence that resulted in this settlement.  (Connelly

22   Decl. ¶¶ 2-3.)  In addition to preparing for and attending her deposition, Plaintiff met and

23   conferred with her counsel on a number of occasions to discuss the case; she provided

24   information and documents to her counsel and made herself available to answer any other

25   questions.  (Id. at ¶ 3.)[6]  Further, in addition to the services Plaintiff provided, Plaintiff also

26   contends she took a significant risk, as Plaintiff risks prejudice in the future from other potential

27   _____

28   [6]  Here, Plaintiff also states these efforts secured an exceptional result.  The Court finds it a reasonable and fair
settlement amount for the reasons expressed above, but cannot base the incentive award on exceptional results given
the Court accepts the Defendant's calculation of a 2.20% valuation.

1   employers that may be less willing to hire an individual who has filed suit against a prior

2   employer—particularly a Section 226 wage statement lawsuit pursued on a representative basis.

3   (Id. at ¶ 4.)  Plaintiff also emphasizes she took this risk upon herself; the State benefited; no other

4   allegedly aggrieved employees had to face potential prejudice in future employment; and nor did

5   the State have to allocate its limited resources to ensure compliance with the Labor Code.  (Mot.

6   19)

7          Plaintiff's motion does not make absolutely clear the delineation between the incentive

8   award amount and the amount of compensation for the general release.   (See Mot. 8-9.)

9   Nonetheless, the Plaintiff's declaration proffers that Plaintiff's individual Labor Code § 226(a)

10  claim pled in this lawsuit would entitle her to $2,050 in penalties if she prevailed at trial; and that

11  a claim under Labor Code § 203, not pled in this action, would entitle her to around $3,156 in

12  additional penalties.  (Connelly Decl. ¶ 6.)  Thus, taking these figures, the Court can presume

13  that at least $5,206 of the incentive award is reasonably attributable to the general release of

14  individual claims, and that less than $5,000 would be attributable to the service award aspect and

15  thus would fall under the $5,000 presumptively reasonable service award.  See Harris, 2012 WL

16  381202, at *7 (noting in the Ninth Circuit, courts have found that $ 5,000 is a presumptively

17  reasonable service award) (collecting cases).

18         Therefore, the Court finds the limited PAGA release, the Plaintiff's general release, and

19  the Plaintiff's incentive/release award amount is a fair and reasonable aspect of the overall

20  settlement of this PAGA action.  See Parker v. Cherne Contracting Corp., No. 18-CV-01912-

21  HSG, 2021 WL 5834227, at *9 (N.D. Cal. Dec. 9, 2021) ("Named Plaintiffs . . . have individual

22  claims against Defendant that would not be resolved by the Limited Release  . . . the Settlement

23  Agreement also provides that [named] Plaintiffs . . . will release all their individual claims in

24  exchange for a payment of $20,000 each . . . [the general release] does not apply to or affect the

25  [other members and] [t]he Court finds that the General Release Payments invite no risk of

26  preferential treatment because the Settlement Class Members will not be subject to or affected by

27  the  General  Release  [and]  [m]oreover,  Named  Plaintiffs  provide  calculations  reasonably

28  justifying these amounts based on the estimated value of their individual claims.").  The Court

20

1 shall grant the incentive and release payment of $10,000.

2         3.   <u>Attorneys' Fees and Costs</u>

3         The court now turns to the attorneys' fees provision of the Agreement.  Under the

4 Agreement, from the Gross Settlement Amount of $252,000.00, attorneys' fees will be no more

5 than 33⅓% of the Gross Settlement Amount (or $84,000.00) and litigation costs of up to $10,000

6 are permitted—though Plaintiff's Counsel seeks reimbursement of $4,794.16 in costs only.

7 (Agreement § 3.1.1; Lee Decl. ¶ 8.)

8         **a.**     **General Legal Standards**

9         The relevant provision of PAGA provides that "[a]ny employee who prevails in any

10 action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Lab. Code

11 § 2699(g)(1).

12         The Ninth Circuit has approved two methods for determining attorneys' fees cases where

13 the attorneys' fee award is taken from a common fund set aside for the entire settlement: the

14 "percentage of the fund" method and the "lodestar" method.  <u>Vizcaino v. Microsoft Corp.</u>, 290

15 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

16 "common fund cases" to choose either method.  <u>Id.</u>; <u>Vu v. Fashion Inst. of Design & Merch.</u>, No.

17 14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).

18         Under either approach, "[r]easonableness is the goal, and mechanical or formulaic

19 application of method, where it yields an unreasonable result, can be an abuse of discretion."

20 <u>Fischel v. Equitable Life Assurance Soc'y of U.S.</u>, 307 F.3d 997, 1007 (9th Cir. 2002).  The

21 Ninth Circuit has generally set a twenty-five percent (25%) benchmark for the award of

22 attorneys' fees in common fund cases.  <u>Id.</u> at 1047–48; <u>see also</u> <u>In re Bluetooth</u>, 654 F.3d at 942

23 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,

24 providing adequate explanation in the record of any 'special circumstances' justifying a

25 departure.").

26         Reasons to vary the benchmark award may be found when counsel achieves exceptional

27 results for the class, undertakes "extremely risky" litigation, generates benefits for the class

28 beyond simply the cash settlement fund, or handles the case on a contingency basis.  <u>Vizcaino</u>,

1  290 F.3d at 1048–50; see also In re Online DVD-Rental, 779 F.3d at 954–55.  Ultimately,

2  however, "[s]election of the benchmark or any other rate must be supported by findings that take

3  into account all of the circumstances of the case."  Vizcaino, 290 F.3d at 1048.  The Ninth

4  Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness

5  of a particular percentage recovery of a common fund.  Id. at 1050 ("Where such investment is

6  minimal, as in the case of an early settlement, the lodestar calculation may convince a court that

7  a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting

8  a higher percentage when litigation has been protracted."); see also In re Online DVD-Rental,

9  779 F.3d at 955.

10      Even where the parties have agreed to the attorney fee award, "courts have an

11  independent obligation to ensure that the award, like the settlement itself, is reasonable[.]"  In re

12  Bluetooth, 654 F.3d at 941.  "[A] district court must carefully assess the reasonableness of a fee

13  amount spelled out in a class action settlement agreement" to determine whether it is "

14  'fundamentally fair, adequate, and reasonable'  Fed. R. Civ. P. 23(e)."  Staton, 327 F.3d at 963.

15  A court "may not uncritically accept a fee request," but must review the time billed and assess

16  whether it is reasonable in light of the work performed and the context of the

17  case.  See Common Cause v. Jones, 235 F .Supp. 2d 1076, 1079 (C.D. Cal. 2002); see

18  also McGrath v. Cnty. of Nev., 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not

19  adopt representations regarding the reasonableness of time expended without independently

20  reviewing the record); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir.

21  1984) (remanding an action for a thorough inquiry on the fee request where "the district court

22  engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party

23  wholesale" and explaining a court should not "accept[ ] uncritically [the] representations

24  concerning the time expended").

25      The party seeking fees bears the burden of establishing that the fees and costs were

26  reasonably necessary to achieve the results obtained.  See Fischer v. SJB–P.D., Inc., 214 F.3d

27  1115, 1119 (9th Cir. 2000).  Therefore, a fee applicant must provide time records documenting

28  the tasks completed and the amount of time spent.  Hensley v. Eckerhart, 461 U.S. 424, 424

1   (1983); <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945–46 (9th Cir. 2007).   "Where the

2   documentation of hours is inadequate, the district court may reduce hours accordingly."

3   <u>Hensley</u>, 461 U.S. at 433.

4          Courts have noted that "[c]alculating attorneys' fees under this provision [of PAGA]

5   requires application of the lodestar."   <u>Perez</u>, 2021 WL 3129602, at *5 (collecting cases).

6   Plaintiff's motion acknowledges the Court's discretion to utilize either method, and submits

7   argument under both methods.   (See Mot. 14-15.)

8          Plaintiff's motion begins with a lodestar proffer.   In that section, Plaintiff proffers that

9   "[w]ith respect to the Plaintiff's Counsel's hours, the Court is not required to perform an

10  'exhaustive cataloguing and review of counsel's hours,' " <u>Barbosa v. Cargill Meat Sols. Corp.</u>,

11  297 F.R.D. 431, 451 (E.D. Cal. 2013).   (Mot. 15.)   However, to be clear, such lax review of

12  billing records is in the context of using the lodestar as a cross-check of the percentage method,

13  and here, Plaintiff submits under the lodestar method first, and under the percentage method

14  second.   <u>See Barbosa</u>, 297 F.R.D. at 451 ("Where the lodestar method is used as a cross-check to

15  the percentage method, it can be performed with a less exhaustive cataloguing and review of

16  counsel's hours."); <u>Beltran</u>, 2023 WL 1467118, at *34 ("Where a lodestar is used as a cross-

17  check, the court 'may use a 'rough calculation of the lodestar.' " (quoting <u>Bond v. Ferguson</u>

18  <u>Enters., Inc.</u>, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30,

19  2011))).

20         As explained in greater detail below, the only timesheet provided is somewhat

21  generalized block billing without specific dates.   Thus, the Court finds it prudent to first use the

22  percentage of the fund method, and then use the lodestar as a rough calculation as a cross-check

23  to the percentage method.

24         **b.     Percentage of Common Fund Award**

25         In the Ninth Circuit, courts typically utilize twenty-five percent of the common fund as

26  the "benchmark" for a reasonable fee award, with adjustments provided there is adequate

27  explanation in the record for any special circumstances that justify departure.   <u>In re Bluetooth</u>,

28  654 F.3d at 942.   Prior to <u>In re Bluetooth</u>, the Ninth Circuit noted the usual range for common

1   fund attorney fees is between twenty to thirty percent.  See Vizcaino v. Microsoft Corp., 290

2   F.3d 1043, 1047 (9th Cir. 2002).  Reasons to vary the benchmark award may be found when

3   counsel achieves exceptional results for the class, undertakes "extremely risky" litigation,

4   generates benefits for the class beyond simply the cash settlement fund, or handles the case on a

5   contingency basis.  Vizcaino, 290 F.3d at 1048–50; see also In re Online DVD-Rental, 779 F.3d

6   at 954–55.

7        Plaintiff argues numerous factors support awarding 33⅓% of the common fund.  Plaintiff

8   first argues counsel achieved exceptional results for the State, emphasizing Defendant has

9   previously defended PAGA claims through trial—and successfully reduced the amount of PAGA

10  penalties by 90%, Carrington, 30 Cal. App. 5th at 529, with Plaintiff obtaining a greater recovery

11  for the State while eliminating the risk of potentially not prevailing on the merits, an excellent

12  result, especially since Defendant had reasonable arguments to argue for a significant reduction

13  in penalties.  However the Court found above that the lower 2.20% valuation figure is applicable

14  rather than the 15% figure, and thus the Court compares Carrington to such valuation.   In

15  Carrington, the court awarded $5 per-pay-period following a bench trial, reduced from a $50

16  maximum penalty, and here, the valuation penalty is $2.20 per-pay-period, reduced from

17  Plaintiff's proffer of a potential $100 penalty.  This is a greater proportional reduction than in

18  Carrington.  Although the Court finds this amount adequate in light of the risks of continued

19  litigation, including the pending motion for summary judgment and potential trial, the Court

20  finds this result only justifies an attorneys' fee award at the benchmark level.

21       Plaintiff argues the lawsuit "generated benefits beyond the cash settlement fund."

22  Vizcaino, 290 F.3d at 1049.  Plaintiff notes the system glitch impacted 3,963 employees from

23  September 29, 2019, through April 30, 2021, but the system glitch was corrected by Defendant

24  by April 30, 2021, shortly after Plaintiff initiated the lawsuit in January 2021.  (Yang Decl. ¶ 4.)

25  Plaintiff emphasizes that regardless of whether Plaintiff prevailed on the merits, the mere filing

26  of the lawsuit resulted in employees benefiting from Defendant's correction of the system glitch

27  that and provision of clearer wage statements.

28       The Court finds this argument somewhat persuasive, but not particularly greater than

would be in a typical class action or PAGA action where potential claims bring an employer to make clear necessary changes to safeguard their business.  As Plaintiff states, Starbucks fixed the software glitch very shortly after the filing of the lawsuit, within months of the filing of the lawsuit.  Correction of an obvious software glitch is distinguishable from other types of nonmonetary relief that result from litigation or directly from a settlement, particularly that which changes view of employment law or policy in practice.  For example, in Vizcaino, through the course of litigation, "Microsoft agreed to hire roughly 3000 class members as regular employees and to change its personnel classification practices, a benefit counsel valued at $101.48 million during the 1999–2001 period alone."  Vizcaino, 290 F.3d at 1049.  Further, the scope of the litigation impacted the view of employment law nationwide, as "[t]he court observed that the litigation also benefitted employers and workers nationwide by clarifying the law of temporary worker classification [and] noted that as a result of this litigation, many workers who otherwise would have been classified as contingent workers received the benefits associated with full time employment."  Id.; see also Ramirez, 2017 WL 3670794, at *5 ("[T]he settlement's injunctive relief provides that Defendant will comply with California wage and hour laws in the future, that Defendant will join a Farm Employer Association . .  that Defendant will ensure that employees are fully trained to prevent and respond to claims of sexual harassment  . . . that Defendant will hold meetings to discuss preventing sexual harassment and retaliation with Defendant's crew foreperson every harvesting season and will provide a telephone number to report harassment in English or Spanish . . . [and] that Defendant will submit to an audit of its payroll by Plaintiff's counsel in March 2018.").

　　Plaintiff argues the lawsuit was extremely risky for Plaintiff's Counsel as the fees here were wholly contingent in nature; and counsel contends this case presented far more risk than the usual contingent fee case, given that Defendant is a corporate defendant who had retained a premier and highly experienced defense firm that historically litigates these types of lawsuits through trial.  This is somewhat persuasive in light of the previous similar actions that Starbucks took to trial, however, the Court does not find the risk to reward contingency nature of this case wholly different than common class actions against employers, as to justify an upward departure,

1   in relation to the other relevant <u>Vizcaino</u> factors.  Considering all of the factors, and the amount

2   of settlement in conjunction, this factor of risk does not weigh in favor of increasing the

3   attorneys' fees beyond the benchmark.

4         Plaintiff argues the requested percentage is below the market rate, and not only did the

5   retainer agreement in this matter provide for 40% of Plaintiff's recovery to be awarded as

6   attorneys' fees, the lodestar also shows that the market rate for Plaintiff's Counsel's work on this

7   case easily exceeds the requested percentage of the fund.  As the Court finds in the next section,

8   a lodestar calculation supports an attorneys' fee award at the benchmark level.  The Court

9   acknowledges the requested benchmark represents less than some fee awards in wage-and-hour

10  class actions in California.  <u>See</u>, <u>e.g.</u>, <u>Stuart v. Radio Shack Corp.</u>, No. C-07-4499 EMC, 2010

11  WL 3155645 (N.D. Cal. Aug 9, 2010) (noting benchmark of 1/3 of total settlement was within

12  range of percentages courts have held reasonable in other class action lawsuits); <u>Romero v.</u>

13  <u>Producers Dairy Foods, Inc.</u>, No. 1:05cv00484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov.

14  14, 2007) (awarding benchmark fees of 1/3 of total settlement in wage and hour class action).

15  Nonetheless, because both the Ninth Circuit and this Court have applied a twenty-five percent

16  benchmark for the award of attorneys' fees in common fund cases, <u>see</u> <u>In re Bluetooth</u>, 654 F.3d

17  at 942; <u>Rodriguez v. M.J. Brothers, Inc. (M.J. Brothers)</u>, No. 1:18-cv-00252-LJO-SAB, 2019

18  WL 3943856 (E.D. Cal. Aug. 21, 2019), for the other aforementioned reasons, the Court finds

19  the attorneys' fees and expenses award of 25% is reasonable under the percentage method.

20        Twenty-five percent the total settlement fund yields an attorneys' fees award of $63,000.[7]

21  The lodestar cross-check that the Court performs next confirms the appropriateness of awarding

22  fees at no more than the benchmark level.

23        **b.    Lodestar Check Supports Reduction in Requested Fees**

24        The "lodestar" approach calculates attorney fees by multiplying the number of hours

25  reasonably expended by a reasonable hourly rate.  <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196,

26  1202 (9th Cir. 2013); <u>Camacho v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 978 (9th Cir. 2008).

27  _____

28  [7] $252000 ÷ 4 = $63,000.

1  Plaintiff submits the lodestar for just one[8] of Plaintiff's Counsel through the finalization

2  of this settlement—without a multiplier—will be approximately $109,692.50 (151.3 hours x

3  $725/hour), which exceeds the fee requested by Plaintiff here and results in a negative multiplier

4  of 0.76.  (Yang Decl. ¶ 14.)

5        i.  Reasonable Hourly Rates

6  The Court finds the hourly fees used to calculate this amount must be reduced to reflect

7  the market rate within this community.  The Supreme Court explained that attorney fees are to be

8  calculated with "the prevailing market rates in the relevant community." Blum v. Stenson, 465

9  U.S. 886, 895–96, n.11 (1984).  In general, the "relevant community" for purposes of

10  determining the prevailing market rate is the "forum in which the district court sits."

11  Camacho, 523 F.3d at 979.  Thus, when a case is filed in the Fresno Division of the Eastern

12  District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate

13  forum to establish the lodestar hourly rate..."  See Jadwin v. Cnty. of Kern, 767 F. Supp. 2d

14  1069, 1129 (E.D. Cal. 2011).[9]

15  "To inform and assist the court in the exercise of its discretion, the burden is on the fee

16  applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the

17  requested rates are in line with those prevailing in the community for similar services by lawyers

18  of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.

19  "Though affidavits provide satisfactory evidence of the prevailing market rate, they are not

20  conclusive … [and] Courts should rely on their own familiarity with the market … bas[ing] their

21  rates on the standards of the legal community in which the court sits."  Cal. Ass'n of Rural

22  Health Clinics v. Douglas, No. 2:10-cv-00759-TLN-EFB, 2014 WL 5797154, at *3 n.7 (E.D.

23

24  [8]  Plaintiff provides no additional hours or rates for other attorneys that may have worked on this action.

25  [9]  At least one judge in this district has found it may utilize rates in Sacramento, for cases in the Fresno Division.
26  See Perez, 2021 WL 3129602, at *5 ("The court recognizes that judges in the Eastern District of California
   frequently distinguish between the Fresno and Sacramento communities in determining hourly rates . . .[t]his court
   has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's
27  award of such fees in cases originating in Fresno, particularly in specialized fields of litigation [as] the typical
   approach looks to the *district* in which the court sits [and] the undersigned would note that according to the Local
   Rules of this court, this is not a district court with separate divisions, as many are, but rather is a single district
28  sitting in designated locations for venue purposes." (emphasis in original)).

Cal. Nov. 6, 2014).

Thus, this Court also relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate. Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011). In the Fresno Division of the Eastern District of California, across a variety of types of litigation, generally, attorneys with experience of twenty or more years of experience are awarded $350.00 to $400.00 per hour; attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour; attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour; and less than $200.00 per hour for attorneys with less than five years of experience. See Freshko Produce Servs., Inc. v. Write On Mktg., Inc. (Freshko), No. 1:18-cv-01703-DAD-BAM, 2019 WL 3798491, at *2–3 (E.D. Cal. Aug. 13, 2019), report and recommendation adopted, 2019 WL 5390563 (E.D. Cal. Oct. 22, 2019) (finding that "[i]n the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour," that "$300 is the upper range for competent attorneys with approximately a decade of experience," and that the accepted range for attorneys with less than ten years of experience "is between $175 and $300 per hour"; and awarding $350 per hour to attorney with approximately 27 years of experience, and $175 per hour to attorney with "approximately four years of experience") (citations omitted).[10]

---

[10]   See also Garcia v. FCA US LLC, No. 1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); Est. of Casillas v. City of Fresno, No. 1:16-cv-01042-AWI-SAB, 2020 WL 869117, at *4–5, *11 (E.D. Cal. Feb. 21, 2020), appeal dismissed in part, No. 19-16436, 2020 WL 3470092 (9th Cir. Jun. 5, 2020), and appeal dismissed, No. 19-16436, 2021 WL 3758352 (9th Cir. Aug. 18, 2021) (reducing requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience, who was considered "accomplished and reputable … with many [] years of experience in civil rights cases and other types of litigation requiring competent trial work"); Mike Murphy's Enters., Inc. v. Fineline Indus., Inc., No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding $325.00 per hour as requested by attorney with over twenty years of experience; $300.00 per hour as requested by attorney with nearly twenty years of experience; and $250.00 per hour as requested by attorney with seven years of experience); TBK Bank, SSB v. Singh, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding $400.00 per hour to attorneys with over thirty-five years of experience; $350.00 per hour to attorney with twenty years of experience; and $300.00 per hour to attorney with ten years of experience); Phillips 66 Co. v. Cal. Pride, Inc., No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. Jul. 6, 2017), report and recommendation adopted, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding $400.00 per hour to attorney with twenty years of experience); Roach v. Tate Publ'g & Enters., No. 1:15-cv-00917-SAB, 2017 WL

Here, Plaintiff is requesting an hourly rate of $725 per hour, for Counsel Yang.  (Mot. 16; Yang Decl. ¶ 13.)  Plaintiff's Counsel argues his skill and experience justify the requested rates; that he has significant experience in the area of employment and wage and hour class and representative actions; and that his practice focuses on representing employees in employment matters, particularly wage and hour cases on a contingency basis.  (Yang Decl. ¶¶ 8-11.) Plaintiff proffers California courts in this district have found Plaintiff's Counsel's hourly rate to be reasonable.  (Yang Decl. ¶ 10, Ex. 3 (approving hourly rate of $725 in Tulare County), Exs. 4 & 5 (approving hourly rate of $725 in Sacramento County).)  Plaintiff's Counsel also argues his hourly rate is supported by decisions by this Court that find hourly rates of $750 earlier this year and of $695 as of five years ago to be reasonable for experienced wage- and-hour counsel.  See Mostajo v. Nationwide Mut. Ins. Co., 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023); Mathein v. Pier 1 Imports (U.S.), Inc., 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018).

Plaintiff graduated law school in 2008, beginning practice in labor and employment law, and thus has approximately fifteen (15) years of relevant experience.  (Yang Decl. ¶ 9.)  The Court notes that in the first case cited by Plaintiff from this district where rates up to $750 were awarded, the attorneys had thirty (30) or more years of experience.  See Mostajo, 2023 WL 2918657, at *11 (approving rates ranging from $650 through $750, for "three attorneys with over thirty years of experience.").  Additionally, that case was filed in the Sacramento Division.  Id. Significantly, the rates were accepted as a rough calculation to support an attorneys' fee award at the benchmark level of 25%.  Id.

The other case cited, first recognized the range of fees awarded in such cases in the Eastern District.  See Mathein, 2018 WL 1993727, at *11 ("This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and $545 and $695 for senior counsel and partners . . . [s]ome judges in the Fresno division of the Eastern

5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding $325.00 per hour to attorney with sixteen years of experience in copyright action); Sanchez v. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (awarding $350.00 per hour to attorneys with more than twenty years of experience in wage and hour class action; and $275.00 per hour to attorney with fourteen years of experience); Englert v. City of Merced, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (awarding $450.00 per hour to partner with nineteen years of experience; $400.00 per hour to senior associate attorney with an unspecified number of years of experience; and $325.00 per hour to associate with eight years of experience).

District of California have approved similar rates in various class action settings, while others have approved lower rates.") (collecting cases).  That court ultimately accepted the $695 rate as the upper limit for senior counsel and partners, and other rates for purposes of a rough calculation to support a percentage of the fund method where the court determined an award of 1/3 of the fund to be appropriate.  See id. ("Additionally, class counsel Saltzman's rate is adjusted downward to $695 per hour, which is the upper limit typically recognized for senior counsel and partners in this division of this court.  While rates provided for the other attorneys who worked on this case appear to be somewhat higher than would normally be awarded in the Fresno division of the Eastern District of California, the undersigned accepts them as given for purposes of this 'rough calculation.' ").

The Court does not find the cases directly in line with the Court's own knowledge of the rates in the Fresno Division, and as this Court has recently applied, particularly given counsel here only has fifteen (15) years of experience.  This Court recently recommended reducing a request for a $919 per hour fee to $450 per hour, where the attorney had twenty-four (24) years of experience.  See Jackson v. Fastenal Co., No. 120CV00345JLTSAB, 2022 WL 11147310, at *14 (E.D. Cal. Oct. 19, 2022) ("Plaintiff has not established the requested rate . . . of $919.00 is reasonable [and] [r]ather, relying on its own knowledge of customary legal local rates and experience with the legal market in the Fresno Division. . . and accounting for [counsel's] extensive and exclusive experience in employment litigation, the Court concludes a reasonable rate for an attorney with [such] breadth of experience is $450.00 per hour.").  The Court finds it appropriate, based on Plaintiff's fifteen (15) years of experience in the relevant field and supporting declaration, to award a rate of $400 per hour.  See id.; see also Englert, 2020 WL 2215749, at *13 (awarding $450.00 per hour to partner with nineteen years of experience and $400 per hour for senior associate); Casillas, 2020 WL 869117, at *4–5, *11 (reducing requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience, who was considered "accomplished and reputable … with many [] years of experience in civil rights cases and other types of litigation requiring competent trial work").

/ / /

30

1          ii.      Rate Applied to Reasonable Hours

2          As discussed above, while Plaintiff proffered the Court is not required to perform an

3    "exhaustive cataloguing and review of counsel's hours," Barbosa, 297 F.R.D. at 451, to be clear,

4    such lax review of billing records is in the context of using the lodestar as a cross-check of the

5    percentage method.  Because of the form of the only billing timesheet submitted to the Court, the

6    Court found it necessary to begin with the percentage method and use the lodestar check as a

7    rough calculation.

8          Again, Plaintiff only submitted timesheets for one attorney.  The Court notes the

9    timesheet for counsel Yang is somewhat generalized and may be considered or bordering on

10   block billing,[11] in that no tasks are delineated by date, and work -performed on multiple dates is

11   grouped under a common task.  (See ECF No. 37-1 at 25.)  This is problematic generally for a

12   lodestar check.  Further here, some of the tasks were related to the class claims originally

13   brought but removed in the second amended complaint.  Nonetheless, this is not as problematic

14   as in other requests this Court has reviewed, partially because the somewhat low number of total

15   hours, the fact the timesheet only pertains to one attorney, and the tasks are more delineated than

16   in other settlement approvals this Court has performed.  See Beltran, 2023 WL 1467118, at *27

17   ("This is not the first time [counsel] has presented this Court with block billing entries in support

18   of their fees' petition . . . [t]his is more problematic given the Court's specific forewarnings

19   noted above, and the fact the District Judge now assigned to this action, previously noted the

20   excessive billing practices and reduced a fee award from 35% to 25% in such case, with an

21   admonition that a further reduction may be warranted.").

22          Turning to the timesheet, many of the hour entries are not excessive to the point where

23   the Court is unable to determine whether the amount of hours expended on a task is

24

25   [11]  "Block billing is a practice where the amount of time spent by an attorney on each discrete task is not identified, but instead all hours spent during the course of a day on multiple tasks are billed together."  Yeager v. Bowlin, No.

26   CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1–2 (E.D. Cal. Apr. 26, 2010).  "The California State Bar's Committee on Mandatory Fee Arbitration has concluded that block billing 'hides accountability' and may 'increase

27   time by 10% to 30%' by lumping together tasks."  Id.  "More importantly, the usage of block billing is fundamentally inconsistent with the lodestar method because it 'render[s] it virtually impossible to break down

28   hours,' leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task."  Id. (quoting Bell v. Vista Unified Sch. Dist., 82 Cal.App.4th 672, 689 (2000)).

unreasonable, for example, Yang proffers 11.8 hours expended drafting the opposition to summary judgment.  However, some are duplicative making it difficult to delineate.  For example, yang proffers 8.2 hours drafting the Rule 30(b)(6) deposition outline; 9.5 hours preparing for the Rule 30(b)(6) deposition; an additional 5.5 hours preparing for and conducting the same deposition; 8.0 hours for preparing for Plaintiff's deposition; and an additional 5.2 hours preparing and defending Plaintiff's deposition.  Also, the largest time entry is for 14.2 hours for undated "[d]raft and revise settlement approval documents, including motion, declarations, and proposed order."  (Id.)  Similarly, counsel Yang proffers 8.9 hours for "[d]raft and revise joint stipulation of PAGA settlement and confer with defendant regarding same," and 10.5 hours to prepare and respond to various correspondence with the parties regarding potential for settlement.

Counsel Yang's timesheet proffers a total of 141.3 hours, and requests an additional 10 hours for associated concurrent and future tasks related to the settlement and this motion. Although the Court has concerns about the timesheet, the Court finds it can accept the total hours as a guide for a rough calculation of the lodestar.  Accepting the hours of 151.3 as reasonable, and applying a reduced hourly rate of $400, yields a lodestar attorneys' fees calculation of $60,520.  Although somewhat less than 25%, the Court finds the lodestar rough calculation supports the Court's finding that an award at the benchmark level of 25% ($63,000), is appropriate.[12]  The Court shall grant an attorneys' fee of 25% of the total settlement amount, or $63,000.  The reduced amount results in a greater amount for the PAGA penalty fund, as the Court calculates below.

### c.   The Requested Litigation Costs Are Reasonable.

PAGA also allows a prevailing Plaintiff to recover litigation costs.  Cal. Lab. Code § 2699(g)(1).  The Agreement permits Plaintiff's Counsel to request up to $10,000.00 in litigation costs.  (Agreement § 3.1.1.)  Plaintiff's Counsel, however, seeks $4,794.16 in costs only.  (Lee Decl. ¶ 8, Ex. A, ECF No. 37-2 at 5; Yang Decl. ¶ 6.)  As set forth in accompanying declarations

---

[12]  This equates to a lodestar multiplier of approximately 1.041.

1   of Plaintiff's counsel, these costs were all directly incurred in the prosecution of this action,

2   including filing fees and service fees.

3         The Court has reviewed counsels' declarations, which attest to the costs they incurred, as

4   well as the exhibits attached thereto, and finds the expenses incurred to be reasonable.

5   Accordingly, the Court approves reimbursement of expenses in the amount requested in the

6   amount of $4,794.16 as fair, adequate, reasonable, and consistent with PAGA's policies.

7         **d.      The Administration Costs Are Reasonable.**

8         Plaintiff proffers that because the Agreement requires payments not only to Plaintiff,

9   Plaintiff's Counsel, and the LWDA, but also to other current and former employees, significant

10  time and effort will be required to administer the Agreement if it is approved by this Court.

11  Among other things, the Administrator will prepare and mail each absent employee's share and

12  prepare appropriate tax forms for all parties who receive payments under the Agreement.

13  Similarly, any uncashed checks must be voided so that the unclaimed amounts can be forwarded

14  to the State of California Controller's Office Unclaimed Property Fund.  Plaintiff proffers

15  Phoenix Settlement Administrators, is a well-recognized settlement administrator, and has

16  quoted Administration Costs not to exceed $16,000.00 to administer the settlement.  (Yang Decl.

17  ¶ 6; see also Agreement § 3.1.3.)

18        The Court finds these administration costs are reasonable and will grant approval of this

19  aspect of the settlement agreement.

20                                        **V.**

21                                      **ORDER**

22        The Court finds the settlement and its terms meets the statutory requirements set forth by

23  PAGA; and are fundamentally fair, reasonable, and adequate in view of PAGA's public policy

24  goals.  Cal. Lab. Code §§ 2699(a), 2699.3; O'Connor, 201 F. Supp. 3d at 1133; Officers for

25  Justice, 688 F.2d at 625; Perez, 2021 WL 3129602, at *4.  The Court finds Plaintiff has fairly

26  and adequately protected the interests of the State, and Plaintiff's Counsel are qualified to serve

27  as counsel for the Plaintiff in her individual and representative capacity.  The Court finds the

28  requested attorneys' fees shall be reduced to 25% of the total settlement fund, or $63,000, and

1    that the difference shall be added to the PAGA penalty fund.

2        Accordingly, IT IS HEREBY ORDERED that:

3    1.    The motion for approval of the PAGA settlement (ECF No. 37) is GRANTED

4          with a reduction in attorneys' fees;

5    2.    The Court grants approval of the settlement in accordance with the terms of the

6          Agreement and this order;

7    3.    The parties shall carry out the terms of the Agreement and this order;

8    4.    Within ten (10) business days of the "Effective Date" defined in the Agreement,

9          Defendant is hereby ordered to deposit the $252,000.00 Settlement Amount with

10         Phoenix Settlement Administrators (the "Administrator");[13]

11   5.    Within seven (7) days after receipt of the Settlement Amount, the Administrator

12         shall distribute the Settlement Amount as follows:

13         a.  $63,000.00 as Attorneys' Fees to Plaintiff's Counsel;

14         b.  $4,794.16 as Costs to Plaintiff's Counsel;

15         c.  $16,000.00 as Administration Costs to the Administrator;

16         d.  $10,000.00 as a General Release Payment to Plaintiff;

17         e.  $118,654.38 as PAGA Penalties to the Labor and Workforce Development

18             Agency; and

19         f.  $39,551.46  as PAGA Penalties to Aggrieved Employees in equal shares;[14]

20   6.    The Clerk of the Court is DIRECTED to ENTER JUDGMENT in favor of

21         Plaintiff against Defendant and CLOSE the case.

22   7.    Without affecting the finality of the order and final judgment filed herewith, the

---

23   [13]  The Court notes that the proposed order states the settlement amount to be distributed to the Administrator is
24   $160,000.00.  (ECF No. 37-4 at 2.)  The Court considered whether this was meant to account for fees or costs,
     however, it appears this was an error, and the correct amount to be district to the Administrator is the full Settlement
25   Amount of $252,000.00, given the individual amounts to be distributed by the Administrator as laid out in the
     proposed order add up to $252,000.00.

26   [14]  Before a reduction in attorneys' fees, the PAGA penalty fund totaled $137,205.84 ($252,000.00 - $84,000.00 -
27   $4,794.16 - $16,000.00 - $10,000).  Adding the difference due to the reduction in attorneys' fees ($84,000.00 -
     $63,000.00 = $21,000.00), results in an increased PAGA penalty fund of $158,205.84.  75% of that amount for the
28   LWDA is $118,654.38 ($152,205.84 x 0.75), and 25% of that amount for the aggrieved employees is $39,551.46
     ($152,205.84 x 0.25).

1      Court reserves continuing jurisdiction over this action, Plaintiff, and Defendant,

2      for the purposes of (i) the interpretation and enforcement of the terms of the

3      settlement, (ii) settlement administration matters, and (iii) post-Judgment matters

4      as may be appropriate under Court rules or as set forth in the Agreement; and

5   8.   Except as otherwise provided in the Agreement, the parties are to bear their own

6      costs and attorneys' fees.

7

8   IT IS SO ORDERED.

9   Dated:   **September 28, 2023**

                                                UNITED STATES MAGISTRATE JUDGE